IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VALERIE DAWSON JUDAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-00552-RAH-SMD |
| | ) |
| CITY OF DOTHAN, ALABAMA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

### **INTRODUCTION**

Pending before the Court is the Defendants' motion to dismiss. The motion is fully briefed and thus ripe for decision. For the reasons set forth below, the motion is due to be granted.

### **FACTS AND PROCEDURAL HISTORY**

In describing the lengthy set of facts giving rise to this lawsuit, the Court construes the factual allegations in the Complaint as true, as it must at the motion to dismiss stage, but "exclud[es] the pleadings not entitled to the assumption of truth due to their conclusory nature." *Turner v. Williams*, 65 F.4th 564, 572 (11th Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). And when video footage evidence is available at this stage, the Court "must construe all ambiguities in the video footage in favor of the plaintiff," unless the video "clear[ly] and obviously contradicts the plaintiff's alleged facts." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024) (internal quotations omitted) (quoting *Baker v. City of Madison*, 67 F.4th 1268, 1277–78 (11th Cir. 2023)). If that is the case, the Court "accept[s] the video's depiction instead of the complaint's account[] and . . . view[s]

the facts in the light depicted by the video." *Id.* (internal quotations omitted) (quoting *Baker*, 67 F.4th at 1277–78).

Valerie Dawson Judah is a licensed attorney who resides in Dothan, Alabama. (Doc. 1-1 at 6.) Officer Casey Beck, an on-duty officer for the Dothan Police Department, pulled Judah over on the night of August 2, 2022. (Doc. 1-1 at 6; Doc. 4-1.) When Officer Beck asked Judah whether she had been drinking alcohol that evening, she denied drinking and said only that she had been playing Bingo at the Elks Club. (Doc. 1-1 at 6; Doc. 4-3 at 00:03:00:05.) Claiming he thought Judah had been drinking because of her "driving behavior" and his observation of her "glassy eyes," Officer Beck asked Judah to participate in various field sobriety tests. (Doc. 4-3 at 00:11:31:10.) She agreed, and when she exited her vehicle, Officer Beck stated that he could smell the odor of alcohol. (*Id.* at 00:12:49:01.) Judah then voiced hesitation about the field sobriety tests due to a claimed right knee injury. (Doc. 1-1 at 7; Doc. 4-3 at 00:13:08:13.) Officer Beck asked whether she wanted to remove her shoes (heels) for purposes of the field sobriety tests, but she declined. (Doc. 4-3 at 00:13:08:13.) Judah was then arrested, cuffed with her hands behind her back, placed in the police car, and taken to the Dothan City Jail. (Doc. 1-1 at 7.)

At the jail, Officer Beck opened the car door, and Judah exited unassisted and still wearing her heels. (Doc. 1-1 at 7; Doc. 4-3 at 00:55:02:00.) She then began walking to the holding area door still unassisted and with her hands handcuffed behind her back. (Doc. 1-1 at 7; Doc. 4-3 at 00:55:02:00.) As she walked toward the door, Judah fell to the ground, hitting her head on the concrete. (Doc. 1-1 at 7; Doc. 4-3 at 00:55:21:05.) According to Judah, her knee gave out.[1] (Doc. 1-1 at 7.)

---

[1] Judah claims her knee gave out. In the video, Officer Beck stated that it appeared that Judah's foot buckled due to the heeled shoes that she was wearing. For purposes of this motion, the Court will assume that Judah's right knee gave out and that she had previously warned Officer Beck about her knee issue.

2

EMTs were called and tended to Judah's head injury. (Doc. 1-1 at 8; Doc. 4-3 at 1:01:45:02.) She was then transported to the local hospital for further treatment. (Doc. 1-1 at 8.)

Judah filed suit on July 29, 2024, against the City of Dothan, Alabama, Officer Beck, Officer Hunter Sanders, and various fictitious parties. In her Complaint, Judah raised ten counts. After consultation with defense counsel, Judah later conceded to the dismissal of all counts, except the federal count for excessive force (Count Two) and the state law count for assault and battery (Count Eight), both brought against Officer Beck.

## JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over the federal issues raised in this case under 28 U.S.C. §§ 1331 and 1343, and jurisdiction over the state law claims under 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility

3

standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### A. Federal Excessive Force Claim

In Count Two, Judah alleges that Officer Beck violated Judah's Fourth and Fourteenth Amendment rights to be free from excessive force. According to the Complaint, "Beck handcuffed [Judah] behind her back after she clearly explained of her knee injury," to which "Beck told [Judah] to walk from the police vehicle to the jail entrance without assisting her, negligently allowing her to fall, injuring her face." (Doc. 1-1 at 10.) Judah claims that "Beck's excessive and unreasonable force proximately caused violations to Plaintiff's clearly established 4th and 14th rights under the Constitution . . . ." (*Id.*) Officer Beck moves to dismiss the claim, arguing that he is entitled to qualified immunity.

"Qualified immunity shields public officials from liability for civil damages[,]" *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (quotations and citation omitted), unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the "complaint fails to allege the violation of a clearly established constitutional right." *Id.* (citation omitted). But regardless,

4

"[o]nce an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (citation omitted).

The Eleventh Circuit has established a two-part analysis to determine whether a defendant is entitled to qualified immunity. First, a defendant must show that he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citation omitted). If "the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.* (citation omitted). To meet this burden, the plaintiff must show "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* (citation omitted). The parties do not contest that Officer Beck was engaged in a discretionary function when he arrested Judah or when he took her to the Dothan City Jail. The Court, therefore, begins its analysis by determining whether the Complaint alleges sufficient facts that show a violation of Judah's constitutional rights under the Fourth Amendment.

"The Fourth Amendment encompasses the right be free from the use of excessive force during an arrest." *Scott v. City of Red Bay*, 686 F. App'x 631, 633 (11th Cir. 2017) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). While making an arrest, "[a]n officer has the right to use some degree of physical force[,] . . . but the force used must be reasonably proportionate to the need for that force." *Id.* (quoting *Lee*, 284 F.3d at 1190) (internal quotations omitted); *see also Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010) ("A law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest. For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls." (citation omitted)). Whether the amount of force an officer used during an arrest is "reasonably proportionate to the

5

need for that force . . . is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee*, 284 F.3d at 1198 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citation omitted). To determine whether an officer's use of force was objectively reasonable, courts look to several factors, including: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Id.* (internal quotations and citation omitted).

The facts pled in the Complaint and as shown by the video footage do not plausibly show a Fourth Amendment violation even in the most generous sense. Officer Beck placed Judah in handcuffs and transported her to the Dothan City Jail after he arrested her for driving under the influence. Officer Beck then parked his police cruiser in the jail bay in front of the holding area door where he opened the rear passenger side door of his cruiser and instructed Judah to step out and walk to the holding area door. Judah exited the vehicle unassisted, began walking to the door, and then fell to the ground face-forward. Because handcuffs secured her hands behind her back, Judah was unable to break her fall, which caused her to strike her face on the concrete floor. After Judah's fall, officers tended to Judah and called for medical attention. Emergency medical personnel treated her, and then Officer Beck took Judah to the hospital for further evaluation. According to Judah, this constituted excessive and unreasonable force because Officer Beck negligently allowed Judah to walk to the door without assisting her, thereby allowing her to fall.

Judah does not allege that Officer Beck pushed her, shoved her, or in any

6

manner caused her to trip or fall, or that he acted with intent or purpose to cause her to fall. The video "clear[ly] and obviously" depicts that her injuries were sustained in an accidental fall while walking. *Jackson*, 97 F.4th at 1350. Whether or not Officer Beck should have done more to assist or catch Judah before she fell is a question of negligence. Count Two states as much. Negligence by a defendant acting under color of state law does not support a Fourth Amendment excessive force claim. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.") (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)); *Maughon v. Bibb Cnty.*, 160 F.3d 658, 660 (11th Cir. 1998) (per curiam) ("Negligent or innocent mistakes do not violate the Fourth Amendment."); *see also Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (clarifying that *Daniels* applies to substantive, as well as procedural, due process). As such, Officer Beck is entitled to qualified immunity because Judah has not pled a constitutional violation.

But that is not all. Even if one were to assume that Officer Beck's conduct rose to the level of a constitutional violation, Judah has nevertheless failed to show that it was clearly established at the time that these facts rose to the level of a constitutional violation. *See Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). A right is "clearly established" when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Here, "clearly established law consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) (citation omitted). Under that concept, Judah "must point to either (1) case law with indistinguishable facts, (2) a broad statement of principle within the Constitution, statute, or case law," *Crocker*, 995

7

F.3d at 1240 (internal quotations omitted), that applies with "*obvious clarity*" to the circumstances, *Sebastian*, 918 F.3d at 1311 (cleaned up and emphasis added), or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Crocker*, 995 F.3d at 1240 (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)).

Judah bears the burden on this issue, and she offers nothing. She cites no relevant law from the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court. She points to no broad statement of principle within the Constitution, statute, or case law that applies with "*obvious clarity*" to the circumstances. *Sebastian*, 918 F.3d at 1311. And finally, she pleads no conduct that is so egregious that a constitutional right was clearly violated, even in the total absence of case law.

As Officer Beck points out in his reply brief, Judah references facts from an altogether different case— involving a dog bite—that was previously litigated before this Court.[2] As such, as to the issue of whether Judah has pointed to "case law with indistinguishable facts," *Crocker*, 995 F.3d at 1240, Judah once again fails to meet her burden, and therefore, she fails to overcome Officer Beck's assertion of qualified immunity. Thus, Count Two is due to be dismissed under Officer Beck's qualified immunity assertion.

## B. State Law Assault and Battery Claim

In Count Eight, Judah brings a state law claim against Officer Beck for assault and battery. Because Officer Beck is entitled to qualified immunity on the sole

---

[2] It is unclear whether Judah referenced these facts to draw similarities to her case or if the Defendants' argument is true (*see* doc. 15 at 3–6 (arguing that Judah copied and pasted lines from one of the briefs in *Thomas v. City of Dothan*, No. 23-cv-00214, 2023 WL 6965006 (M.D. Ala. Oct. 20, 2023)); but regardless, the facts in *Thomas*, where the plaintiff alleged excessive force by a physical attack of officers and a canine, *id.*, at *1, are not "indistinguishable facts" from the case at hand, where Judah alleges excessive force based on negligent conduct that involved Officer Beck making no physical contact with her when she fell. *Crocker*, 995 F.3d at 1240 (internal quotations omitted).

contested federal claim, the Court elects not to exercise jurisdiction over the state law claim for assault and battery. *See Myers v. Cent. Fla. Invests., Inc.*, 592 F.3d 1201, 1226–27 (11th Cir. 2010) ("[F]ederal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction." (citation omitted)); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *see also Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law." (citation omitted)); *Ingram v. School Bd. of Miami-Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (per curiam) ("Where . . . a court has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial." (citation omitted)). Accordingly, the Court declines to retain jurisdiction over the state law claim against Officer Beck for assault and battery and will remand Count Eight back to the state court.

## CONCLUSION

Officer Casey Beck is entitled to qualified immunity as to the sole contested federal claim against him. Accordingly, it is **ORDERED** as follows:

(1)   Defendants' Motion to Dismiss (doc. 3) is **GRANTED**;

(2)   Counts One, Three, Four, Five, Six, Seven, Nine and Ten are **DISMISSED** without prejudice upon agreement of the parties (*see* doc. 11);

(3)   Count Two is **DISMISSED** with prejudice on grounds of qualified immunity; and,

(4)   Because the Court will not retain jurisdiction over the remaining state law claim (Count Eight), this action will be **REMANDED** to the Circuit Court of Houston County, Alabama.

**DONE**, on this the 26th day of November 2024.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE